IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


JAMES CIBULA,     :   1:12-cv-2065
           :
    Plaintiff,   :
    v.      :   Hon. John E. Jones III
           :
CHARLES FOX, *et al.*,   :
           :
    Defendants.  :

## MEMORANDUM

### July 25, 2013

Presently before the Court are two motions to dismiss Plaintiff's Amended

Complaint. The first motion (Doc. 32) was filed by Defendants Charles Fox,

Lloyd White, Michael Green, Jeffrey Imboden, Catherine McVey, Benjamin

Martinez, Matthew Mangino, Judith Viglione, and John Tuttle (hereinafter

collectively referred to as "Parole Defendants").[1] The second motion (Doc. 36)

was filed by Defendants Steinberg, Ruffo, Mahlmeister, Eckert, Burkhart, Hayden,

Reed, Laufer, Cole, Oppman, Kusiak, Roberts, and Smiley (hereinafter collectively

---

[1] These Defendants are all alleged to be former or current members of the Pennsylvania Board of Probation and Parole. Plaintiff's Amended Complaint (Doc. 29) names for the first time as part of this group Defendants Kimberly Barkley and Cynthia Daub. The docket indicates that Alan Robinson, attorney for the Parole Defendants, has not yet entered an appearance on behalf of these additional Parole Defendants. They are also not named as Moving Defendants in the Motion to Dismiss (Doc. 32).

referred to as "Corrections Defendants").[2]  For the reasons set forth below, Defendants' motions shall be granted.

## I.  FACTUAL BACKGROUND[3]

On February 5, 2007, James Cibula ("Cibula" or "Plaintiff") entered a plea of *nolo contendre* in the Northampton County Court of Common Pleas to two counts of making terroristic threats.  (Doc. 29 ¶ 6).  As part of the sentencing process, a presentence report was prepared recommending a sentence of 0-3 months imprisonment, but Judge Emil Giordano instead imposed the maximum sentence on each count, resulting in a combined sentence of five to ten years. (Doc. 29 ¶¶ 8-10).

Cibula subsequently appealed his sentence to the Pennsylvania Superior Court, which determined that the length of the sentence was not supported by the record and was based on "an unspoken belief by the Judge that Plaintiff was guilty of far greater crimes than those to which he pled" *nolo contendre*.  (Doc. 29 ¶¶ 18-21).  The Superior Court accordingly vacated the sentence and remanded the case back to Judge Giordano.  (Doc. 29 ¶ 22).

---

[2]  Each of the Corrections Defendants is alleged to be an employee of the Pennsylvania Department of Corrections.

[3] In accordance with the applicable standard of review, the following facts are derived primarily from the Amended Complaint (Doc. 29) and viewed in the light most favorable to the Plaintiff.

On December 21, 2007, Judge Giordano re-sentenced Cibula to two consecutive terms of six months to five years. (Doc. 29 ¶ 23). Approximately one week later, Cibula was transferred to the State Correctional Facility at Mercer. (Doc. 29 ¶ 26). At this time, Cibula had already served almost two years in prison and was eligible for immediate parole. (Doc. 29 ¶ 27). Upon arriving at Mercer, Department of Corrections employees or administrators recommended, without the benefit of a hearing, that Cibula be evaluated as a sex offender and participate in a sex offender program at the prison. (Doc. 29 ¶¶ 28, 29). Despite the fact that Cibula had not been convicted of a sex offense, the Department of Corrections and Pennsylvania Board of Probation and Parole ("Parole Board") jointly determined as a condition of Plaintiff's release on parole that he complete a treatment program for sex offenders. (Doc. 29 ¶¶ 32, 43). Cibula's first request for parole was denied on or about July 17, 2008, at least in part because the Parole Board stated that he must be evaluated as a sex offender. (Doc. 29 ¶¶ 34, 35).

On October 23, 2008, Department of Corrections employee Stephen Laufer submitted a Correctional Plan Evaluation to his superiors and the facility's Parole office indicating that Cibula had attended one session of the Sex Offender Program. (Doc. 44-1 at 8). Laufer wrote the following in the evaluation's "Comments" section: "Inmate discharged from group due to existing information

3

regarding his case. Review of the record indicates all charges of sexual offending withdrawn by the state. This failure should not be held against him unless new information regarding the original charges is uncovered." (Doc. 44-1 at 8).

Cibula applied for parole again in 2009, but his second request for parole was denied on or about August 10, 2009, again at least partially due to his failure to participate in a treatment program for sex offenders. (Doc. 29 ¶¶ 37, 38). Cibula's 2009 request was denied despite Department of Corrections Counselor Foust's support. (Doc. 29 ¶ 100). Counselor Foust stated in her recommendation that "this decision was made based on inmate's successful completion of recommended program and continued misconduct-free behavior." (Doc. 29 ¶ 101). On February 3, 2010, the Parole Board issued an Administrative Action which stated:

> Based on the information provided to the Parole Board, you have not attended and participated in a Department of Corrections program of counseling or therapy designed for incarcerated sex offenders as required by 42 Pa. C.S.A. Section 9718.1(a). Pursuant to 42 Pa. C.S.A. Section 9718.1(b), your offense requires that you participate in sex offender treatment in order to be eligible for parole. Therefore, you will not be interviewed by the Parole Board for parole/reparole until notification is provided by the Department of Corrections that you have attended and participated in a Department of Corrections sex offender treatment program.[4]

---

[4] A copy of this document is attached to Plaintiff's brief in opposition to Parole Defendants' motion. (Doc. 44-1 at 5).

After receiving the Administrative Action, Cibula did not apply for parole in 2010. (Doc. 29 ¶ 44).  On May 11, 2011, on its own volition and without petition from Cibula, the Parole Board granted him parole.  (Doc. 29 ¶ 45).  Cibula was released from prison on August 18, 2011.  (Doc. 29 ¶ 48).

## II.    PROCEDURAL HISTORY

On October 15, 2012, James Cibula filed a Complaint (Doc. 1) against Charles Fox, Llyod White, Michael Green, Jeffrey Imboden, Catherine McVey, Benjamin Martinez, Matthew Magino, Judith E. Viglione, and John Tuttle.  On November 7, 2012, Defendants filed a motion to dismiss Plaintiff's complaint (Doc. 8) and a brief in support thereof (Doc. 10).  Cibula filed his brief in opposition to the motion (Doc. 18) on January 15, 2013, and Defendants filed their reply brief (Doc. 19) on January 29, 2013.  By Order of February 26, 2013 (Doc. 22), we granted Defendants' motion to dismiss but granted Plaintiff leave to amend his complaint to more particularly allege facts supporting his allegation that Defendants designated him as a sex offender without due process.

On March 28, 2013, Plaintiff filed his Amended Complaint (Doc. 29), naming Kimberly Barkley and Cynthia Daub as additional Parole Defendants and adding all of the Corrections Defendants.  The Amended Complaint contains four counts pursuant to 42 U.S.C. § 1983: (1) Count I, for violation of due process by

5

Corrections Defendants; (2) Count II, for violation of due process by Parole Defendants; (3) Count III, for violation of Eighth Amendment protection from cruel and unusual punishment by Corrections Defendants; and (4) Count IV, for conspiracy by all Defendants to deprive Plaintiff of the rights identified in the preceding counts.

On April 17, 2013, Parole Defendants filed their motion to dismiss (Doc. 32) and brief in support of the motion (Doc. 33). On April 24, 2013, Corrections Defendants filed their motion to dismiss (Doc. 36), with a brief in support (Doc. 41) following on May 8, 2013. Plaintiff filed briefs in opposition to the motions (Docs. 44, 45) on May 24, 2013. No reply briefs were filed. Thus, the pending motions have been fully briefed and are ripe for disposition.

## III. STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the

complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than "a sheer possibility." *Iqbal*, 556 U.S. at 678. "Where a

complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 679. Next, the district court must identify "the 'nub' of the . . . complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 588 n.8). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## IV.    DISCUSSION

## A. Parole Defendants' Motion

Parole Defendants present several arguments in support of the notion that Plaintiff's claims against them in his Amended Complaint must be dismissed. The arguments are altered slightly to account for our earlier ruling granting their motion to dismiss Plaintiff's original Complaint, but are essentially the same. They argue that (1) they are entitled to absolute immunity; (2) Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); and (3) Plaintiff's allegations are legally insufficient to state a claim. We shall address these arguments in turn.

### 1. Absolute Immunity

Although qualified immunity is the general rule for executive officials charged with constitutional violations, there are some situations that merit absolute immunity from suit. *See Butz v. Economou*, 438 U.S. 478, 508 (1978). For example, it has been long-established that judicial officers enjoy absolute immunity from suit for money damages when carrying out judicial acts. *See Stump v. Sparkman*, 435 U.S. 349, 355 (1978) (quoting *Bradley v. Fisher*, 80 U.S. 335, 347 (1871)). Parole Board members are not judicial officers; they are executive officers carrying out state policy with respect to probation and parole. *See Thompson v. Burke*, 556 F.2d 231, 238 (3d Cir. 1977). A Parole Board member's level of immunity varies depending upon the nature of his or her acts. When

probation and parole officers are acting in their "executive or administrative" capacity they are entitled only to good faith qualified immunity, but when they are "engaged in adjudicatory duties" they enjoy absolute immunity. *Wilson v. Rackmill*, 878 F.2d 772, 775 (3d Cir. 1989).

In a parole board context, there are several acts that entitle the actor or actors to absolute immunity. They include (1) hearing evidence; (2) making recommendations as to whether to parole a prisoner; and (3) making decisions to grant, revoke, or deny parole. *See Wilson*, 878 F.2d at 776; *Harper v. Jeffries*, 808 F.2d 281, 284 (3d Cir. 1986). However, the Third Circuit has held that absolute immunity does not apply when a parole officer is engaged in executive, administrative, or ministerial acts such as "(1) investigating allegations of parole violations and crimes; (2) typing and signing warrants for arrest of parole violators; (3) assisting police in initiating police investigations of crimes committed by parolees; (4) providing false information that a parolee violated the terms of parole or committed a crime; (5) performing the 'general responsibilities' of a parole or probation officer; (6) presenting information to the parole board about a parole violation; or (7) conducting a warrantless search of a parolee's residence without probable cause." *Simon v. Ward*, 2001 WL 41127 *3 (E.D. Pa. Jan. 16, 2001)(citations omitted). Another district court within the Third Circuit has also

held that executive/administrative duties include carrying out a mandatory statutory duty such as verifying information in a parolee's record. *See Jones v. Johnson*, 402 F.Supp. 992, 997 (E.D. Pa. 1975).

We held in our previous Order that Parole Defendants have absolute immunity from suit based on their decisions to deny Plaintiff parole. (Doc. 22 at 9-10). However, we found that Plaintiff's claims against the Parole Defendants arising from other conduct, such as the issuance of the Administrative Action, should not be dismissed until more information was gleaned through discovery to allow us to make an informed ruling as to whether the other non-parole-decision acts should be classified as adjudicative or merely executive/administrative. (Doc. 22 at 10). Now, Plaintiff has additionally alleged in his Amended Complaint that the Parole Defendants, along with the Corrections Defendants, were directly involved in the decision to classify him as a sex offender without first conducting a hearing on the matter. (Doc 29 ¶¶ 31-32). The Parole Defendants have not presented any new arguments regarding absolute immunity and thus we have no reason to alter our opinion. Parole Defendants' adjudicative decisions to deny him parole are barred by absolute immunity, but Parole Defendants may only be entitled to qualified immunity for their other alleged actions.

**2.     Invalidation or Expungement of Plaintiff's Conviction or**

## Sentence

There are two avenues under federal law by which a plaintiff can seek relief on complaints related to imprisonment: (1) a petition for habeas corpus and (2) a complaint under 42 U.S.C. § 1983. Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus. *See Preiser v. Rodroguez*, 411 U.S. 475, 500 (1973). Requests for relief turning on circumstances of confinement may be presented in a § 1983 action. *See Muhammad v. Close*, 540 U.S. 749, 750 (2004). The Supreme Court discussed this boundary separating habeas corpus and § 1983 in *Heck v. Humphrey*, 512 U.S. 477 (1994).

In *Heck*, the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-487. When a state prisoner seeks damages in a § 1983 suit, the district court must evaluate whether judgment in the plaintiff's favor would necessarily imply the invalidity of his or her sentence. *Id.*

at 487.  If it would, and the sentence has not already been invalidated, the complaint must be dismissed.  *Id*.

Parole Defendants argue now, as they did in their previous motion to dismiss (Doc. 8), that the holding in *Heck* mandates dismissal of this case.  In our previous Order, we held that "Cibula's success in overturning the Parole Board's denials of parole would 'necessarily demonstrate the invalidity of the Parole Board's decision[s].'  *Williams,* 453 F.3d at 177."  (Doc. 22 at 12).  Thus, challenges to those decisions were barred by *Heck*.  However, we found that Plaintiff's claims based on his being classified as a sex offender, allegedly without due process, were not barred by *Heck* because he would not necessarily have been paroled sooner if not for being designated a sex offender.  (Doc. 22 at 13).  Plaintiff has now amended his complaint to clarify that he is not challenging the parole denial decisions themselves, but rather other conduct by the Parole Defendants that does not necessarily imply the invalidity of his sentence.  In accordance with our previous ruling, we will not dismiss Plaintiff's Amended Complaint as being barred by *Heck*.

### 3.    Sufficiency of Plaintiff's Claims

In our previous Order (Doc. 22), we noted that the Third Circuit has held that inmates have a liberty interest in not being labeled as sex offenders and

therefore due process is required before sex offender conditions may be imposed on an inmate who has not been convicted of a sexual offense. *See Renchenski v. Williams*, 622 F.3d 315 (3d Cir. 2010). However, although a prisoner has the right to challenge the alleged lack of due process he or she received prior to being deemed a sex offender, we ultimately found Plaintiff's Complaint to be "factually insufficient." (Doc. 22 at 14). Plaintiff alleged a violation of a recognized liberty interest and could theoretically present a cognizable claim that he was denied due process, but nowhere in the Complaint did he allege that the Parole Defendants labeled him as a sex offender. Rather, Plaintiff merely alleged that Parole Defendants considered that designation in determining whether to grant him parole. That was not enough to state a claim, and so we dismissed the Complaint with leave to amend.

Now that Plaintiff has filed his Amended Complaint, we find his pleadings sufficient to state a claim. Although Parole Defendants contend that they personally had no part in labeling Plaintiff a sex offender and only relied on erroneous information provided to them by the Department of Corrections, Plaintiff does aver in his Amended Complaint that the Parole Defendants played a role in designating him a sex offender and mandating that he participate in a sex offender treatment program in order to be considered for parole. (Doc. 29 ¶¶ 31-

32).  The facts that Plaintiff alleges in connection to his designation as a sex offender are directed primarily at Corrections Defendants rather than Parole Defendants.  (Doc. 29 ¶¶ 28-29).  However, he has nonetheless alleged Parole Defendants' involvement in that designation.  Construed in the light most favorable to the Plaintiff, that alleged involvement is sufficient to state a claim.

### B.      Corrections Defendants' Motion

Corrections Defendants argue that Plaintiff's claims against them must be dismissed for four distinct reasons.  Corrections Defendants argue that (1) the Amended Complaint should be dismissed for insufficient process, (2) Plaintiff's claims are barred by the Eleventh Amendment, (3) Plaintiff's claims are time-barred, and (4) Plaintiff's conspiracy claim lacks specificity and therefore fails to state a claim.  We shall address these arguments in turn.

### 1.      Eleventh Amendment Immunity

The Eleventh Amendment of the United States Constitution prevents suits in federal court for money damages against a state, or one of its agencies or departments, unless the state has given its explicit consent to be sued.  *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 97-100 (1984).  A suit brought against an individual acting is his or her official capacity is considered a suit against the state for the purposes of sovereign immunity.  See *Will v. Mich. Dept.*

*of State Police*, 491 U.S. 58, 71 (1989). Pennsylvania has identified nine specific exceptions to sovereign immunity: (1) vehicle liability; (2) medical-professional liability; (3) care, custody, or control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 P.S. § 8522(b). Clearly, none of the exceptions apply here.

Plaintiff does not contest that the Corrections Defendants are immune from suit for money damages in their official capacities. In his brief, Plaintiff clarifies that he is not seeking money damages against any of the Defendants in their official capacities, but rather sued them "individually and in their official capacity" in order to indicate that they were acting under color of state law. (Doc. 45 at 9). Plaintiff offers to clarify his pleadings to remove any reference to Defendants' "official capacity," but we will accomplish the same purpose by dismissing Plaintiff's Amended Complaint to the extent that it seeks money damages against any and all Defendants in their official capacities. Plaintiff's claims against Defendants in their individual capacities are not affected by Eleventh Amendment immunity so we now turn to Corrections Defendants' statute of limitations argument regarding those claims.

## 2. Statute of Limitations

For the purposes of determining whether a section 1983 action is time-barred, federal courts apply the statute of limitations that would otherwise apply to a personal injury case under state law. *See Kost v. Kozakiewicz*, 1 F.3d 176, 189-190 (3d Cir. 1993). Thus, Pennsylvania law dictates a two-year statute of limitations for section 1983 claims. *See id.* (citing 42 Pa. C.S. § 5524). The statute of limitations "begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991).

Corrections Defendants argue that Plaintiff's claims against them must be dismissed because it is clear on the face of his Amended Complaint that his alleged injuries occurred more than two years prior to the filing of the instant suit. Plaintiff has alleged that he was designated a sex offender upon his arrival at SCI Mercer on or about December 28, 2007. (Doc. 29 ¶¶ 26-29). Even if Plaintiff was unaware of that designation at the time, he was certainly aware by February 3, 2010, when he received an Administrative Action from the Parole Board informing him that he would not be considered for parole unless he participated in a sex offender treatment program. (Doc. 29 ¶ 42). Although Plaintiff was imprisoned until August 18, 2011, Corrections Defendants argue that he knew or had reason to

know of his injury no later than February 3, 2010, but failed to file his Complaint until October 15, 2012 and failed to name the Corrections Defendants until the filing of his Amended Complaint on March 28, 2013.

Plaintiff argues, in response, that although he knew of the injury more than two years prior to filing his Complaint, there were continuing violations due to his continuous and ongoing sex offender classification. Specifically, Plaintiff was subjected to the "traumatic" experience of being considered by other inmates and prison personnel to be a sex offender, which only ended on August 18, 2011 when he was paroled. Plaintiff cites the continuing violations doctrine, an "equitable exception to the timely filing requirement" which provides that "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001).

In order to benefit from the continuing violations doctrine, a plaintiff must show that the defendant's conduct was truly continual and "more than the occurrence of isolated or sporadic acts." *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 755 (3d Cir. 1995). The Third Circuit has identified three factors that should

18

be considered in this inquiry: (1) subject matter - whether the violations constitute the same type of discrimination, tending to connection them in a continuing violation; (2) frequency - whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence - whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his or her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. *See id.* at 755 n. 9. The third factor, degree of permanence, is the most important. *Cowell*, 263 F.3d at 292.

We find that the continuing violations doctrine does not apply in this instance. We cannot locate in Plaintiff's Amended Complaint any alleged acts by the Corrections Defendants during the two year window prior to October 15, 2012 that could reasonably be considered part of a continuing violation. Plaintiff alleges the Parole Board issued an Administrative Action on February 3, 2010, which caused him not to apply for parole that year. (Doc. 29 ¶¶ 42, 44). The only subsequent events noted in the Amended Complaint are the granting of Plaintiff's parole on May 11, 2011 and his release from prison on August 18, 2011. (Doc. 29 ¶¶ 45, 48). Plaintiff's parole and release are the only acts that Plaintiff alleges to have taken place within the statute of limitations period.

The only allegation that could possibly support the idea of a continual

violation is Plaintiff's contention that Corrections Defendants disclosed to prison personnel and other inmates that he was a sex offender, which caused him to be "taunted, spat upon, provoked to fight, punched, kicked, humiliated, and degraded on numerous occasions by other prisoners." (Doc. 29 ¶¶ 83, 84). By doing so, they "perpetuated the myth and misinformation that Plaintiff was a sex offender." (Doc. 29 ¶ 102). Although Plaintiff considers these alleged disclosures and myth-perpetuations to be new and continuing violations recurring constantly until the date of his release from prison, we think it more reasonable to consider these disclosures merely the consequences of the original act of deeming Plaintiff a sex offender in 2007. Plaintiff was only labeled a sex offender once; the harms he alleges are simply the result of others learning of that label.

Ultimately, we are convinced that the "degree of permanence" of the initial decision to designate Plaintiff a sex offender precludes his continuing violations theory. That initial designation was sufficiently permanent to trigger Plaintiff's awareness of and duty to assert his rights. Regardless of whether there was a continuing intent to violate Plaintiff's rights, it is clear that the consequences of that designation would continue. Plaintiff has confirmed that the consequences *did* in fact continue. The statute of limitations exists, in part, to prevent plaintiffs from sleeping on their rights. *See United States v. Richardson*, 889 F.2d 37, 40 (3d Cir.

1989). "The continuing violations doctrine should not provide a means for relieving plaintiff from their duty to exercise reasonable diligence in pursuing their claims." *Cowell*, 263 F.3d at 295. It would confound that policy rationale to allow Plaintiff to proceed with claims that were not filed until nearly five years after he was labeled a sex offender and more than two and a half years after he unquestionably knew of that designation, its degree of permanence, and its consequences. Because Plaintiff's claims against Corrections Defendants are barred by the statute of limitations, those claims shall be dismissed in their entirety.

In addition, although Parole Defendants did not raise the statute of limitations in their motion to dismiss, it is apparent from the face of the Amended Complaint that Plaintiff's cause of action against Parole Defendants has similarly not been brought within the applicable statute of limitations. Plaintiff has not alleged acts by any Defendants, including the Parole Defendants, within the two year prior to the filing of his Complaint for which they could be held liable. Thus, we shall order *sua sponte* dismissal of Plaintiff's claims against Parole Defendants as well. *See McPherson v. U.S.*, 392 Fed.Appx. 938, 943 (3d Cir. 2010) (holding that a court may *sua sponte* dismiss a suit for failing to state a claim when a statute of limitations defense is obvious from the face of the complaint). Plaintiff's claims

against all Defendants are dismissed as time-barred.

### 3. Sufficiency of Process & Conspiracy Claim

Corrections Defendants have also raised an objection to the manner in which they were served and an argument that Plaintiff's conspiracy claim against them lacks specificity. Because we are dismissing the entirety of Plaintiff's Amended Complaint as time-barred, we need not discuss these issues.

## V. CONCLUSION

For the foregoing reasons, we shall grant Parole Defendants' Motion to Dismiss (Doc. 32) and grant Corrections Defendants' Motion to Dismiss (Doc. 36). An appropriate order shall issue.